UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Christine Rodriguez, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>Mars Wrigley Confectionery US, LLC,<br><br>                Defendant | 1:23-cv-04422<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Mars Wrigley Confectionery US, LLC ("Defendant") manufactures Combos, a baked cracker tube described as having a "Filling made with REAL CHEESE" above a fresh block of cheddar cheese ("Product").



2. Cheese is defined by Merriam-Webster as "a food consisting of the coagulated, compressed, and usually ripened curd of milk separated from the whey."

3. Federal and identical state regulations similarly define cheese as "the fresh or matured product obtained by draining after coagulation of milk, cream, skimmed, or partly skimmed milk, or a combination of some or all of these products." 21 C.F.R. Part 133 Subpart B.

4. Cheese is valued by consumers for its nutritional value because it is high in protein and contains key vitamins and minerals.

5. Cheese is also valued for its savory taste.

6. According to one food industry executive with the international dairy conglomerate Kerry Inc., consumers value snack foods with ingredients they know and recognize, like cheese.

7. Another executive emphasized the added-value of dairy ingredients to "[T]he $90 billion snack market" to drive consumer purchasing.

8. This is because "Dairy, in its many forms, is increasingly seen as an inherently healthy simple food."

9. Though reasonable consumers will expect the Product's filling to contain a significant and/or predominant amount of cheese because the label states "Filling made with REAL CHEESE" above a large block of fresh cheddar cheese, the amount of cheese in the filling is de minimis in relative and absolute terms.

10. This is confirmed by the fine print of the ingredients, shown in order of predominance by weight.



**INGREDIENTS:** WHEAT FLOUR, PALM OIL, DAIRY PRODUCTS SOLIDS, MALTODEXTRIN, CORN OIL, SUGAR, MODIFIED CORN STARCH; LESS THAN 2% OF: SALT, BAKERS AND CHEDDAR CHEESE BLEND (MILK, CHEESE CULTURES, SALT, ENZYMES), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE), DEXTROSE, SOY LECITHIN, COLORS (YELLOW 5 LAKE, YELLOW 6 LAKE, BLUE 1 LAKE), WHEY, HYDROLYZED CORN GLUTEN, NATURAL FLAVOR, LACTIC ACID, YEAST EXTRACT, LACTOSE, BUTTERMILK, CITRIC ACID.

11. While the first two ingredients of "Wheat Flour [and] Palm Oil" are used to make the cracker tube, the Product contains a relative and absolute de minimis of "real cheese," confirmed by the statement showing "Less Than 2% of: [] Bakers and Cheddar Cheese Blend."

12. In place of "real cheese," the Product uses "Dairy Products Solids," the third most predominant ingredient.

13. Dairy Products Solids is another name for the dairy ingredient known as whey permeate.[1]

14. Whey permeate is not a component of any "real cheese," because it "is the by-product of the by-product in cheese manufacturing."

15. After "real cheese" is made, the remaining whey is predominantly lactose and protein

---

[1] American Dairy Products Institute ("ADPI"), Dairy Permeate Standard.

not retained in the cheese.

16. Cheese manufacturers then separate out the protein and other remaining solids by physical separation techniques such as precipitation, filtration or dialysis.

17. The resulting whey permeate consists mainly of lactose, the sugary component of milk.

18. Dairy product solids are promoted by the dairy industry as a lower cost, filler ingredient and bulking agent, which adds volume, compared to costlier and higher quality real cheese.

19. Dairy product solids are touted as not just an alternative for the higher valued cheese ingredients but even for other higher value cheese substitutes such as when powder.

20. Dairy product solids lack the nutritional value of real cheese in terms of proteins and other vitamins and minerals.

## Jurisdiction and Venue

21. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

22. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

23. Plaintiff is a citizen of New York.

24. Defendant is a citizen of Delaware and Virginia based on the citizenship of its member, Mars, Incorporated.

25. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

26. The members of the class Plaintiff seeks to represent are more than 100, because the

Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, gas stations and convenience stores, in the States Plaintiff seeks to represent.

27. Venue is in this District with assignment to the Manhattan Courthouse because Plaintiff resides in Bronx County and a substantial part of the events or omissions giving rise to these claims occurred in Bronx County, including Plaintiff's purchase, reliance on the identified statements and omissions, and subsequent awareness they were false and misleading.

## Parties

28. Plaintiff Christine Rodriguez is a citizen of Bronx, Bronx County, New York.

29. Defendant Mars Wrigley Confectionery US, LLC is a Delaware limited liability company with a principal place of business in Hackettstown, New Jersey, Warren County.

30. The sole member of Defendant is Mars, Incorporated, a Delaware corporation with a principal place of business in Virginia.

31. Defendant manufactures and markets the Combos snack products, which has been a leading snack item for decades, valued by consumers for its flavors and ingredients.

32. Plaintiff is like many consumers who enjoys snack foods but also values the quality of ingredients they contain, preferring to consume snacks with ingredients she is familiar with and knows have nutritional value, like real cheese.

33. Plaintiff read and relied on "Made With Real Cheese" and the block of cheddar cheese to expect the filling contained a significant, predominant and/or absolute amount of real cheese.

34. Plaintiff wanted more than the taste of cheese but the food ingredient of cheese because she valued its nutritional attributes such as its protein content, vitamins and minerals.

35. Plaintiff did not know the Product's filling did not contain a significant, predominant and/or absolute amount of real cheese but lower quality substitutes such as dairy product solids.

36. Plaintiff purchased the Product between June 2020 and the present at stores of the type where one buys snacks, such as grocery stores, convenience stores, bodegas and/or dollar stores, near where she lives in the Bronx.

37. As a result of the false and misleading representations, the Product is sold at a premium price, $2.99 for 6.3 oz, excluding tax and sales.

38. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

39. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

40. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged;

41. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

42. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

43. Plaintiff is an adequate representative because her interests do not conflict with other members.

44. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

45. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

46. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

47. Plaintiff incorporates by reference all preceding paragraphs.

48. Plaintiff expected the Product's filling would contain a significant, predominant and/or absolute amount of real cheese.

49. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

50. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its filling would contain a significant, predominant and/or absolute amount of real cheese.

51. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

52. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of snacks with recognizable and valued ingredients like real cheese.

53. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant its filling would contain a significant,

predominant and/or absolute amount of real cheese.

54. Defendant's representations affirmed and promised that the Product's filling would contain a significant, predominant and/or absolute amount of real cheese.

55. Defendant described the Product so Plaintiff believed its filling would contain a significant, predominant and/or absolute amount of real cheese, which became part of the basis of the bargain that it would conform to its affirmations and promises.

56. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

57. This duty is based on Defendant's outsized role in the market for snack products as the owner of the Combos brand.

58. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

59. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

60. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

61. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

62. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its filling would contain a significant, predominant and/or absolute amount of real cheese.

63. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that its filling would contain a significant, predominant and/or absolute amount of real cheese, and she relied on its skill and judgment to select or furnish such a suitable product.

## Fraud

64. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its filling would contain a significant, predominant and/or absolute amount of real cheese even though it knew it used substitutes for real cheese that were lower in value and quality than real cheese.

## Unjust Enrichment

65. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

   1. Certifying Plaintiff as representative and the undersigned as counsel for the class;
   2. Awarding monetary, statutory and/or punitive damages and interest;
   3. Awarding costs and expenses, including reasonable attorney and expert fees; and
   4. Other and further relief as the Court deems just and proper.

Dated:   May 25, 2023

                                            Respectfully submitted,

                                            /s/ Spencer Sheehan
                                            Sheehan & Associates, P.C.
                                            60 Cuttermill Rd Ste 412
                                            Great Neck NY 11021

(516) 268-7080
spencer@spencersheehan.com

10