UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL FRIAS, JESSICA AVILEZ AND ROY CAMPBELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>MARS WRIGLEY CONFECTIONERY US LLC,<br><br>Defendant | 1:23-cv-04422-AT<br><br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs Miguel Frias ("Plaintiff Frias"), Jessica Avilez ("Plaintiff Avilez") and Roy Campbell ("Plaintiff Campbell") ("Plaintiffs") allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

**I.   DAIRY INDUSTRY IN NEW YORK**

1. The New York dairy industry is the fourth largest in the United States.

2. With over 3,500 farms producing over 15 billion pounds of milk each year, it is the most significant component of our agricultural industry.

3. When not consumed as a beverage, milk is used to make cheese.

4. For multiple reasons, per capita cheese consumption has reached an all-time high of 50 lbs.

5. First, consumer demand for cheese is consistent with their growing

preferences for natural foods, made without chemicals or harsh processing.

6. Cheese's definition, as "the coagulated, compressed, and usually ripened curd of milk separated from the whey" fits this bill.[1]

7. Second, cheese is high in protein and nutrients, with key vitamins and minerals.

8. That this factor was important to consumers was observed by a marketing executive, noting how "Dairy, in its many forms, is increasingly seen as an inherently healthy simple food."

9. Third, cheese's increased popularity means most is not consumed in cubes, slices, or sticks.

10. Instead, cheese is featured in a growing number of prepared and packaged snacks.

11. According to one food industry publication, marketers recognize that "made with real cheese" adds value to snacks consumers may have written off years ago as full of artificial and highly processed ingredients.

12. Recognizing this trend, Mars Wrigley Confectionery US LLC ("Defendant") markets cracker tubes with a "Filling made with REAL CHEESE" above a freshly shredded block of cheddar cheese ("Product" or "Combos"), described as "Stuffed Snacks."

---

[1] Merriam-Webster definition.





13. Beneath "Cheddar Cheese Baked Cracker" is the stray, disconnected statement of "Natural Flavor."

## II. LEGAL BACKGROUND

14. Over a hundred years ago, in response to an unregulated environment where companies substituted orange-colored blends of solidified vegetable oils for the real cheese they prominently advertised, the Pure Food and Drug Act of 1906

3

sought to protect consumers from such deception.

15. These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

16. New York adopted the FFDCA through its Agriculture and Markets Law ("AGM"), enacted to "encourage the agricultural industry…[and] to prevent frauds in the traffic therein." AGM § 3.[2]

17. These laws were "deemed an exercise of the police power of the state and a discharge of its obligations for the promotion of the general welfare."

18. The Legislature intended for these laws against deception to be taken up in numerous ways, including "individual enterprise." AGM § 46.

## III. "FILLING MADE WITH REAL CHEESE" AND BLOCK OF CHEDDAR MISLEADING

19. Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby

---

[2] Article 4, Dairy Products, AGM § 46 *et seq.*; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 *et seq.*; Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Title 1, Department of Agriculture and Markets, Chapter I, Milk Control, Subchapter A Dairy Products (Article 4, AGM), Part 17, Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts, 1 N.Y.C.R.R. §§ 17.18 ("Additional standards of identity for milk and milk products.") and 17.20 ("Requirements applicable to the labeling of milk, milk products and frozen desserts.") (adopting Parts 130, 131 and 133 of Title 21), Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), 1 N.Y.C.R.R. § 250.1 *et seq.*; 1 N.Y.C.R.R. § 259.1(a) (adopting Parts 100, 101 and 102 of Title 21).

"develop[ing] sensory expectations" about its ingredients.[3]

20. The representation that the Combos' "Filling [is] made with REAL CHEESE," presumably, cheddar, next to a block of freshly shredded cheddar cheese, is false and misleading to consumers.

21. This is revealed by the fine print of the ingredient list on the back of the package, which shows that it contains "LESS THAN 2% OF: [] BAKERS AND CHEDDAR CHEESE BLEND."



**INGREDIENTS:** WHEAT FLOUR, PALM OIL, DAIRY PRODUCTS SOLIDS, MALTODEXTRIN, CORN OIL, SUGAR, MODIFIED CORN STARCH; LESS THAN 2% OF: SALT, BAKERS AND CHEDDAR CHEESE BLEND (MILK, CHEESE CULTURES, SALT, ENZYMES), LEAVENING (BAKING

---

[3] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

SODA, SODIUM ACID PYROPHOSPHATE), DEXTROSE, SOY LECITHIN, COLORS (YELLOW 5 LAKE, YELLOW 6 LAKE, BLUE 1 LAKE), WHEY, HYDROLYZED CORN GLUTEN, NATURAL FLAVOR, LACTIC ACID, YEAST EXTRACT, LACTOSE, BUTTERMILK, CITRIC ACID.

22. While the most predominant ingredient is the "WHEAT FLOUR" which comprises the cracker tube, the filling consists almost entirely of lower quality cheese substitutes, indicated by the second and third ingredients of "PALM OIL [and] DAIRY PRODUCTS SOLIDS."

23. Instead of the "real cheese" and "cheddar cheese" promised on the label, the Product uses vegetable fats and cheese byproducts.

24. The main filling ingredient is palm oil, a highly processed vegetable oil.

25. Palm oil is not a natural ingredient like real cheese, because it is subjected to hydrogenation and/or interesterification with the use of chemical catalysts to turn it into a solid form.

26. Palm oil contains harmful trans fats and no protein, unlike real cheese, which contains one-quarter protein, healthy fats and essential vitamins and minerals.

27. Palm oil lacks the savory taste of cheese due to the intense processing required to make it palatable.

28. "Dairy Products Solids," the third most predominant ingredient, is

another name for the ingredient known as whey permeate.[4]

29. Whey permeate is not a component of any "real cheese," because it "is the by-product of the by-product in cheese manufacturing."

30. After "real cheese" is made, the remaining whey is predominantly lactose and protein not retained in the cheese.

31. Cheese manufacturers then separate out the protein and other remaining solids by physical separation techniques such as precipitation, filtration or dialysis.

32. The resulting whey permeate consists mainly of lactose, the sugary component of milk.

33. Dairy product solids are promoted by the dairy industry as a lower cost, filler ingredient and bulking agent, which adds volume, compared to costlier and higher quality real cheese.

34. Dairy product solids are touted as not just an alternative for the higher valued cheese ingredients but even for other higher value cheese substitutes such as whey powder.

35. Dairy product solids lack the nutritional value of real cheese in terms of proteins, healthy fats and other vitamins and minerals.

36. Dairy product solids lack the savory taste of real cheese because its lacks the components of real cheese.

---

[4] American Dairy Products Institute ("ADPI"), Dairy Permeate Standard.

## IV. CONCLUSION

37. Federal and State law consider a food "misbranded" and misleading if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); AGM § 201(1).

38. Marketing the Product with a "Filling Made With Real Cheese" is misleading to consumers because the filling is almost entirely lower quality, non-cheese ingredients that consumers are seeking to avoid when buying a product promoted as "Made With Real Cheese."

39. Reasonable consumers viewing the label which states "Cheddar Cheese," "Stuffed Snacks," "Filling Made With Real Cheese," and picture of a block of freshly shredded cheddar cheese, will expect the filling to consist entirely or predominantly of real cheese and/or real cheddar cheese.

40. Instead, the Product's filling is almost entirely made from lower quality cheese substitutes, from palm oil and dairy product solids.

41. The amount of real cheese and real cheddar cheese is less than two percent of the total weight of the ingredients used, a de minimis or negligible amount, in absolute and relative terms compared to the cheese substitutes from palm oil and dairy product solids.

42. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $2.99 for 6.3 oz, excluding tax and sales,

higher than it would be sold for had it been labeled truthfully and in a non-misleading way.

## Jurisdiction and Venue

43. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

45. Plaintiff Frias is a citizen of New York.

46. Defendant is a citizen of Delaware and Virginia based on the citizenship of its member, Mars, Incorporated.

47. The class of persons Plaintiff Frias seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

48. The members of the class Plaintiff Frias seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, bodegas, truck stops, drug stores, gas stations and convenience stores, in New York for several years.

49. Venue is in this District with assignment to the Manhattan Courthouse because Plaintiff Frias resides in New York County and a substantial part of the events or omissions giving rise to these claims occurred in New York County, including Plaintiff Frias' purchase, reliance on the identified statements and

omissions, and subsequent awareness they were false and misleading.

## Parties

50. Plaintiff Miguel Frias is a citizen of New York County, New York.

51. Plaintiff Jessica Avilez is a citizen of Monroe County, New York.

52. Plaintiff Roy Campbell is a citizen of Warren County, New York.

53. Defendant Mars Wrigley Confectionery US, LLC is a Delaware limited liability company with a principal place of business in New Jersey, Warren County.

54. The sole member of Defendant is Mars, Incorporated, a Delaware corporation with a principal place of business in Virginia.

55. Defendant manufactures and markets Cheddar Cheese Combos.

56. Plaintiffs are like many consumers who enjoy snack foods but also value the quality of ingredients they contain, preferring to consume snacks with ingredients they are familiar with and know have nutritional value, like real cheese.

57. Plaintiffs read and relied on "Made With Real Cheese" and the block of cheddar cheese to expect the filling contained a significant, predominant and/or absolute amount of real cheddar cheese and not a de minimis amount of real cheese.

58. Plaintiffs wanted more than the taste of cheese but the food ingredient of cheese because they valued its nutritional attributes such as its protein content, vitamins and minerals and taste.

59. Plaintiffs did not know the Product's filling did not contain a significant,

predominant and/or absolute amount of real cheese but lower quality substitutes such as vegetable oils and dairy product solids.

60. Plaintiffs purchased the Product between June 2017 and October 2023, at stores of the type where one buys snacks, such as grocery stores, convenience stores, big box stores, drug stores, truck stops, warehouse club stores, bodegas and/or dollar stores, near where they live.

61. Plaintiffs paid more for the Product than they would have had they known the representations and omissions were false and misleading or would not have purchased it.

62. The value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant.

## Class Allegations

63. Plaintiffs seek certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in New York who purchased the Product during the statutes of limitations for each cause of action alleged.

64. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

65. Plaintiffs' claims and basis for relief are typical to other members

11

because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

66. Plaintiffs are adequate representatives because their interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

69. Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

70. Plaintiffs incorporate by reference paragraphs 1-42.

71. Plaintiffs expected the Product's filling would contain a significant, non-de minimis, and/or predominant absolute and relative amount of real cheese.

72. The labeling is misleading because instead of being filled with real cheese, the Product's filling consists of substitute cheese ingredients, from vegetable oil and cheese byproducts.

73. Plaintiffs would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

12

## COUNT II
### New York Agriculture & Markets Law ("AGM") § 201

74. Plaintiffs incorporate by reference paragraphs 1-42.

75. Defendant made misrepresentations and omissions of material fact, that the Product's filling would contain a significant, predominant and/or absolute amount of real cheese even though it had less than two percent of real cheese, through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

76. These representations and omissions were in violation of AGM § 201, which prohibit the "Misbranding of food."

77. The labeling violates AGM § 201(1), because "Filling Made With Real Cheese" "is false or misleading" because this does not disclose that the filling is almost entirely from non-cheese ingredients, lower quality cheese substitutes.

78. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79. Defendant knew these statements and omissions were false and/or misleading.

80. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

81. Plaintiffs and class members did in fact rely upon these statements and omissions.

82. Reliance was reasonable and justified because of Combos' reputation as a household name, with products honestly marketed to consumers.

83. As a result of Defendant's misrepresentations, Plaintiffs and class members suffered damages in the amount paid for the Product and the premium amount paid.

## COUNT III
Fraud

84. Plaintiffs incorporate by reference paragraphs 1-42.

85. Plaintiffs satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

86. WHO: Defendant, Mars, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product, that its filling was "Made With Real Cheese," with pictures of a block of freshly shredded cheddar cheese, when this was false and misleading because almost the entire filling was not from real cheese.

87. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the Product's filling was "Made With Real Cheese" with pictures of a block of freshly shredded cheddar cheese, even though it had less than two percent real cheese and almost all its filling was lower quality cheese substitutes.

88. Defendant omitted telling consumers the Product did not contain more

14

than a negligible or de minimis amount of real cheese and used lower quality cheese substitutes.

89. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

90. Upon information and belief, Defendant conducted or relied on research about consumer purchasing habits.

91. Defendant knew or should have known that almost all consumers who see "Made With Real Cheese" next to a block of freshly shredded cheddar cheese will expect the filling to be predominantly made with real cheese, not lower quality cheese substitutes.

92. Consumers prefer ingredients they are familiar with, like "real cheese."

93. Defendant highlighted these attributes in selling the Product to consumers.

94. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

95. Yet, Defendant has represented and/or continues to represent that the Product's filling was "Made With Real Cheese" next to a block of freshly shredded cheddar cheese even though it had less than two percent real cheese and almost all its filling was lower quality cheese substitutes,

96. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, throughout the applicable class period and/or through the filing of this Complaint.

97. WHERE: Defendant's material misrepresentations and omissions, that the Product's filling was "Made With Real Cheese" next to a block of freshly shredded cheddar cheese even though it had less than two percent real cheese and almost all its filling was lower quality cheese substitutes, were made in its advertising and marketing, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

98. HOW: Defendant made written and/or visual misrepresentations and omissions in the advertising and marketing of the Product, that its filling was "Made With Real Cheese" next to a block of freshly shredded cheddar cheese even though it had less than two percent real cheese and almost all its filling was lower quality cheese substitutes

99. And as discussed in detail throughout this Amended Complaint, Plaintiffs and class members read and relied on Defendant's representations and omissions before purchasing the Product.

100. WHY: Defendant misrepresented that the Product's filling was "Made With Real Cheese" next to a block of freshly shredded cheddar cheese even though it had less than two percent real cheese and almost all of its filling was lower quality

cheese substitutes, for the express purpose of inducing Plaintiffs and class members to purchase the Product at a substantial price premium, in part based on consumer demand for foods and snacks containing high value ingredients they were familiar with, like "real cheese."

101. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Certifying Plaintiffs as representatives and the undersigned as Counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 27, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com