UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL FRIAS, JESSICA AVILEZ, AND ROY CAMPBELL, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br><br> v. <br><br><br> MARS WRIGLEY CONFECTIONERY US, LLC, <br><br> *Defendant*. | Civil Action No. 1:23-cv-04422-AT |

MARS WRIGLEY CONFECTIONERY US, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
<u>FIRST AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

FACTUAL ALLEGATIONS ......................................................................................2

PROCEDURAL BACKGROUND...............................................................................3

STANDARD OF REVIEW.........................................................................................4

ARGUMENT ...............................................................................................................4

I.      PLAINTIFFS' GENERAL BUSINESS LAW CLAIMS FAIL........................................4

        A.      The Product's Packaging Is Not Misleading to a Reasonable Consumer. ..............5

        B.      The First Amended Complaint Does Not Allege Causation of a

                Cognizable Injury...............................................................................11

II.     PLAINTIFFS' AGRICULTURE AND MARKETS CLAIM FAILS............................13

III.    PLAINTIFFS' FRAUD CLAIM FAILS. .......................................................14

CONCLUSION.........................................................................................................16

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010)......................................................14

*Angeles v. Nestle USA, Inc.*,
    632 F. Supp. 3d 309 (S.D.N.Y. 2022)..........................................................14-15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4

*Axon v. Citrus World, Inc.*,
    354 F. Supp. 3d 170 (E.D.N.Y. 2018)..................................................................13

*Barreto v. Westbrae Nat., Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)............................................................8, 15

*Beers v. Mars Wrigley Confectionery US, LLC*,
    2022 WL 493555 (S.D.N.Y. Feb. 17, 2022).................................................6-7, 11

*Belcastro v. Burberry Ltd.*,
    2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017).........................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4

*Boswell v. Bimbo Bakeries USA, Inc.*,
    570 F. Supp. 3d 89 (S.D.N.Y. 2021)..................................................................6, 7

*Brownell v. Starbucks Coffee Co.*,
    2023 WL 4489494 (N.D.N.Y. July 12, 2023).......................................................15

*Brownell v. Starbucks Coffee Co.*,
    No. 22-cv-1199, slip op. (N.D.N.Y. Nov. 30, 2023).............................................1

*Budhani v. Monster Energy Co.*,
    527 F. Supp. 3d 667 (S.D.N.Y. 2021)..................................................................5

*Campbell-Clark v. Blue Diamond Growers*,
    2019 WL 10852810 (E.D.N.Y. Dec. 17, 2019).....................................................7

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018).........................................................12

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021)..................................................................5

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018).......................................................................6

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) .............................................................................. 5-6

*Foster v. Whole Foods Mkt. Grp., Inc.*,
    2023 WL 1766167 (E.D.N.Y. Feb. 3, 2023) ........................................................9

*Harris v. McDonald's Corp.*,
    2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)...................................................13

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................................................16

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .....................................................12

*Jackson v. Kraft Heinz Foods Co.*,
    2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) ...............................................*passim*

*Kennedy v. Mondelez Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020).....................................................10

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014).................................................................13

*Lemke v. Kraft Heinz Food Co.*,
    2022 WL 1442922 (W.D. Wis. May 6, 2022) ................................................2, 8

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ..........................................................................15-16

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ....................................................................5, 9, 11

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) .............................................................................9

*Mitchell v. Whole Foods Mkt. Grp., Inc.*,
    2022 WL 657044 (S.D.N.Y. Mar. 4, 2022).........................................................6

*O'Brien v. Nat'l Prop. Analysts Partners*,
    936 F.2d 674 (2d Cir. 1991) ..............................................................................15

*Oldrey v. Nestle Waters N. Am., Inc.*,
    2022 WL 2971991 (S.D.N.Y. July 27, 2022) ......................................................6

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ............................................................................5, 12

*Parham v. Aldi Inc.*,
    2021 WL 709632 (S.D.N.Y. Feb. 15, 2021)........................................................7

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    2019 WL 3409883 (E.D.N.Y. July 26, 2019)................................................4-5, 6

*Russett v. Kellogg Sales Co.*,
    2022 WL 2789837 (S.D.N.Y. July 15, 2022) ......................................................6

*Santiful v. Wegmans Food Mkts., Inc.*,
    2023 WL 2457801 (S.D.N.Y. Mar. 10, 2023) ......................................................6

*Sarr v. BEF Foods*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ...................................................7, 10

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017)...................................................................................13

*Sibrian v. Cento Fine Foods, Inc.*,
    2020 WL 3618953 (E.D.N.Y. July 2, 2020).........................................................7

*Smith v. Gen. Mills Sales, Inc.*,
    2023 WL 2349908 (N.D. Ill. Mar. 3, 2023) .......................................................10

*Steele v. Wegmans Food Markets, Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020)..................................................................17

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ............................................................5, 11

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016) ................................................................................16

*United States ex rel. Tessler v. City of New York*,
    712 F. App'x 27 (2d Cir. 2017) .........................................................................16

*Van Orden v. Hikari Sales U.S.A., Inc.*,
    2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) .....................................................1

*Wurtzburger v. Ky. Fried Chicken*,
    2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ....................................................14

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
    592 F. Supp. 3d 146 (S.D.N.Y. 2022) ..................................................................6

Statutes and Rules

21 Code of Federal Regulations § 101 ........................................................................ 10, 14

Federal Rule of Civil Procedure 9(b) ......................................................................... 15, 16

Federal Rule of Civil Procedure 15(a)(1) ........................................................................4

Individual Practices in Civil Cases 3(b)(iv) ....................................................................3

New York Agriculture and Markets Law § 201(1) .........................................................13

New York Agriculture and Markets Law § 199-a(1) ......................................................14

New York General Business Law § 349 ..................................................................*passim*

New York General Business Law § 350 ..................................................................*passim*

# INTRODUCTION

Plaintiffs' counsel, employing a raft of recycled complaints, has filed over 500 putative class actions against consumer-goods companies, including more than 200 against food manufacturers alone.  The rate and pace at which he does so is remarkable.  So remarkable, in fact, that it has been the subject of comment by several courts.  "Mr. Sheehan has been warned on repeated occasions regarding his practice of filing lawsuits where the theory of the case was not close to viable" and nonetheless continues to "provoke the ire of the judiciary" with frivolous filings.  *Van Orden v. Hikari Sales U.S.A., Inc.*, 2023 WL 5336813, at *9 (N.D.N.Y. Aug. 18, 2023); *see also Brownell v. Starbucks Coffee Co.*, No. 22-cv-1199, ECF No. 41, at *7 (N.D.N.Y. Nov. 30, 2023) ("[Because] Mr. Sheehan filed Plaintiff's complaint without any studies, relevant caselaw, or reasonable interpretations of the wording on the Product label to support the allegations . . . the Court concludes that Mr. Sheehan acted in bad faith when he commenced this action; and, as such, the Court holds Mr. Sheehan in contempt . . . .").  Plaintiffs' counsel has remained undeterred.  In the sixteen weeks since August 18, 2023 (when the Northern District of New York cautioned Mr. Sheehan and ordered him to show cause), he has filed new putative class actions at a rate of over 1.5 cases each week.

Having now dropped his original Plaintiff in this case, *see* ECF No. 26, Plaintiffs' counsel has signed up three new Plaintiffs and filed an "amended" putative class action over Combos®, a snack food featuring a "combination"—hence the name—of a baked cracker shell and a flavored filling.  Plaintiffs take issue with one particular flavor, Cheddar Cheese Baked Cracker Combos®, claiming it is materially misleading that the snack's front packaging features the label "Filling made with REAL CHEESE" above a block of cheddar cheese.  Plaintiffs claim that they selected Combos® as their snack food of choice because they sought the nutritional value of real cheese.  According to Plaintiffs, they were misled as to the amount of real cheese

1

included in the product, despite the information panel disclosing that the filling's predominate ingredient is dairy product solids.

Plaintiffs' counsel has pursued this "real cheese" theory in other similar cases. *See Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749, at *3 (N.D. Ill. Aug. 3, 2022); *Lemke v. Kraft Heinz Food Co.*, 2022 WL 1442922, at *3 (W.D. Wis. May 6, 2022). In each case, the "real cheese" theory failed, and those courts dismissed the claims with prejudice. Plaintiffs' counsel now brings this rejected theory to New York. For the reasons set forth below, this Court should reject that theory and dismiss the claims as other courts have done.

## FACTUAL ALLEGATIONS[1]

Mars Wrigley Confectionery US, LLC ("Mars") is the world's leading manufacturer of chocolate, chewing gum, mints, and fruity confections. Mars has manufactured and marketed its Combos® stuffed snacks for nearly half a century. Combos® are a combination of a baked tube (cracker or pretzel) and a flavored filling. *See* Am. Compl. ¶¶ 12, 21. Combos® come in a broad range of flavored fillings, including Cheddar Cheese, Pizzeria, Pepperoni Pizza, Buffalo Blue Cheese, and Nacho Cheese, encased in tubes of either pretzels or baked crackers.



Plaintiffs purchased a version of Combos® consisting of a baked cracker tube and cheddar-cheese-flavored filling (the "Product") between June 2017 and October 2023. *Id.* ¶ 60.

---

[1] The Amended Complaint's factual allegations must be taken as true for purposes of this motion to dismiss. Mars does not concede that any such allegations are true.

The Product's packaging includes the title "Combos®" with the subtitle "Stuffed Snacks," as well as a medallion stating "Filling made with REAL CHEESE" on the right-hand side of the package, above a "fresh block of cheddar cheese." *Id.* ¶ 12.  On the left-hand side, the packaging reads "Cheddar Cheese / BAKED CRACKER / Natural Flavor" in a vertical stack above an image of some Combos®.  *Id.*

## PROCEDURAL BACKGROUND

Counsel initially filed this case on May 25, 2023, with Ms. Christine Rodriguez as the only named plaintiff and putative class representative.  The complaint asserted claims under §§ 349 and 350 of the New York General Business Law ("GBL"), as well as claims for breach of warranty, fraud, and unjust enrichment.  Following this Court's individual practices regarding motions to dismiss, the parties exchanged pre-motion letters.  In response to Defendant's first pre-motion letter, Ms. Rodriguez withdrew her claims for (i) breach of implied warranty, (ii) breach of the Magnuson-Moss Warranty Act, (iii) fraud, and (iv) unjust enrichment.

Defendant moved to dismiss on November 7, 2023.  This Court's individual practices mandate that, following a motion to dismiss, "the non-moving party ***must***, within ten days of receipt of the motion, notify the Court and its adversary in writing whether (1) it intends to file an amended pleading and when it will do so, or (2) it will rely on the pleading being attacked." Indiv. Prac. 3(b)(iv) (emphasis added).  Ms. Rodriguez never provided that written notification.

Instead, on November 27, 2023, her counsel purported to file an "amended" complaint. But Ms. Rodriguez was nowhere to be found.  Rather than amending her claims, this new complaint omits Ms. Rodriguez without explanation and instead asserts claims on behalf of three individuals—Mr. Miguel Frias, Ms. Jessica Avilez, and Mr. Roy Campbell—none of whom was a "party" to this case with any prior pleadings to amend.  *See* Fed. R. Civ. P. 15(a)(1) ("A ***party***

may amend *its* pleading . . .").  Plaintiffs have not explained how they have any right to submit

an amended complaint, nor why their violation of this Court's Individual Practices should be

excused.  In any event, the Court should dismiss the First Amended Complaint because it fails to

state a claim.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The

"pleading must contain something more . . . than . . . a statement of facts that merely creates a

suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555.  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of

the line between 'possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557).  "Determining whether a complaint states a plausible claim

for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Id.* at 679.

## ARGUMENT

## I.    PLAINTIFFS' GENERAL BUSINESS LAW CLAIMS FAIL.

To plead violations of New York GBL §§ 349 and 350, Plaintiffs must plausibly allege

that "the defendant engaged in consumer-oriented conduct that is materially misleading, and

plaintiff[s] w[ere] injured as a result of the deceptive act or practice."  *Reyes v. Crystal Farms*

*Refrigerated Distrib. Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019).  In demonstrating

that injury, Plaintiffs must show that they "purchased a product and did not receive the full value

of [their] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).  Here,

Plaintiffs' GBL claims suffer from two independent defects—either of which is sufficient to

warrant dismissal.  Plaintiffs have failed to plausibly allege both (1) that the Product's packaging

is "materially misleading" and (2) that they were injured by not "receiv[ing] the full value of

[their] purchase."

> **A.    The Product's Packaging Is Not Misleading to a Reasonable Consumer.**

To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a label

might conceivably be misunderstood by some few consumers." *Dashnau v. Unilever Mfg. (US),

Inc.*, 529 F. Supp. 3d 235, 241 (S.D.N.Y. 2021) (quoting *Twohig v. Shop-Rite Supermarkets,

Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021)).  Rather, they must "plausibly allege that a

significant portion of the general consuming public or of targeted customers, acting reasonably in

the circumstances, could be misled." *Id.*; *see also Budhani v. Monster Energy Co.*, 527 F. Supp.

3d 667, 676 (S.D.N.Y. 2021) (same).

Conduct is materially misleading only if it would mislead "a reasonable consumer acting

reasonably under the circumstances." *Reyes*, 2019 WL 3409883, at *3 (quoting *Orlander*, 802

F.3d at 300).  "[I]n determining whether a reasonable consumer would have been misled by a

particular advertisement, context is crucial." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d

Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam)).

Courts thus "consider the challenged advertisement as a whole, including disclaimers and

qualifying language." *Id.*  "If a plaintiff alleges that an element of a product's label is

misleading, but another portion of the label would dispel the confusion, the court should ask

whether the misleading element is ambiguous.  If so, the clarification can defeat the claim."

*Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021) (quoting *Davis v.

Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018)).  "In evaluating the

efficacy of such a disclaimer, courts consider factors such as the font size, placement, and emphasis." *Reyes*, 2019 WL 3409883, at *3 (citation omitted).  "This is because reasonable consumers understand that, with vague product descriptions, the devil is in the details." *Davis*, 297 F. Supp. 3d at 334 (citation and quotation marks omitted).

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. Courts have echoed that principle in a litany of opinions dismissing cases filed by Plaintiffs' counsel. *See, e.g.*, *Reyes*, 2019 WL 3409883, at *1-5 (dismissing implausible allegations that "made with real butter" on mashed potato product implied absence of margarine); *Santiful v. Wegmans Food Mkts., Inc.*, 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (dismissing case concerning "Naturally Flavored" vanilla cake mix as not likely to mislead); *Oldrey v. Nestle Waters N. Am., Inc.*, 2022 WL 2971991, at *4 (S.D.N.Y. July 27, 2022) (dismissing case concerning flavored natural spring water with label "Taste the Real" as not likely to mislead about actual fruit content); *Russett v. Kellogg Sales Co.*, 2022 WL 2789837, at *2-4 (S.D.N.Y. July 15, 2022) (dismissing case concerning "Frosted Strawberry" Pop-Tarts as not likely to mislead about the product's strawberry content); *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 154-62 (S.D.N.Y. 2022) (dismissing case concerning chocolate-covered ice cream bars as not likely to mislead with respect to coating's oil content); *Mitchell v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 657044, at *8 (S.D.N.Y. Mar. 4, 2022) (same); *Beers v. Mars Wrigley Confectionery US, LLC*, 2022 WL 493555, at *3-7 (S.D.N.Y. Feb. 17, 2022) (same); *Boswell*, 570 F. Supp. 3d at 93-97 (dismissing case concerning "All Butter Loaf Cake" as not likely to mislead with respect to other ingredients); *Parham v. Aldi Inc.*, 2021 WL 709632, at *3-4 (S.D.N.Y. Feb. 15, 2021), *report and recommendation adopted*, 2021 WL 4296432 (S.D.N.

Sept. 21, 2021) (dismissing case concerning reference to vanilla on soymilk label as not likely to mislead as to its ingredients); *Sibrian v. Cento Fine Foods, Inc.*, 2020 WL 3618953 (E.D.N.Y. July 2, 2020) (dismissing a case alleging that "San Marzano" tomatoes did not comply with Italian designation-of-origin certifications because a reasonable consumer would not know the details of such certifications); *Sarr v. BEF Foods*, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) (dismissing case against a food label because it would not communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue Diamond Growers,* 2019 WL 10852810 (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that packaging for "nut and rice" crackers implicitly overstated their nut content).

Plaintiffs' claims that the Product's packaging is misleading fail for numerous reasons. Plaintiffs allege that they "read and relied on 'Made With Real Cheese' and the block of cheddar cheese to expect the filling contained a significant, predominant and/or absolute amount of real cheddar cheese and not a de minimis amount of real cheese." Am. Compl. ¶ 57. That allegation does not suffice to state a claim for relief.

*First*, the statement on the label is literally true, and the First Amended Complaint does not allege otherwise. The Product is made with real cheese. The First Amended Complaint includes an image of the "fine print of the ingredients" and highlights in yellow the real cheese component—"Bakers and Cheddar Cheese Blend (Milk, Cheese Cultures, Salt, Enzymes)." *Id.* ¶ 21. That there are other ingredients included, like "Dairy Product Solids," has no bearing on the fact that the Product's filling is, in fact, "made with REAL CHEESE."

INGREDIENTS: WHEAT FLOUR, PALM OIL, DAIRY PRODUCT SOLIDS, MALTODEXTRIN, CORN OIL, SUGAR, MODIFIED CORN STARCH; LESS THAN 2% OF: SALT, BAKERS AND CHEDDAR CHEESE BLEND (MILK, CHEESE CULTURES, SALT, ENZYMES), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE), DEXTROSE, SOY LECITHIN, COLORS (YELLOW 5 LAKE, YELLOW 6 LAKE, BLUE 1 LAKE), WHEY, HYDROLYZED CORN GLUTEN, NATURAL FLAVOR, LACTIC ACID, YEAST EXTRACT, LACTOSE, BUTTERMILK, CITRIC ACID.
ALLERGY INFORMATION: CONTAINS MILK, WHEAT AND SOY.
DISTRIBUTED BY MARS WRIGLEY CONFECTIONERY US, LLC HACKETTSTOWN, NJ 07840-1503 USA
CONTAINS BIOENGINEERED FOOD INGREDIENTS

*Second*, it is unreasonable for a consumer to read a statement about the ***type*** of ingredient and infer a conclusion about the ***quantity*** of that ingredient. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 804 (S.D.N.Y. 2021). The Product's label says only "Filling made with REAL CHEESE." Am. Compl. ¶ 12. It does not include a modifier like "100%" or "only." *See, e.g.*, *Lemke*, 2022 WL 1442922, at *3 (distinguishing a straight "real cheese" representation from others with such modifiers). The Product's front packaging also has no other statements concerning the quantity of real cheese contained in the Product. *See id.* ("Similarly, the remainder of the front packaging contains no other statement that belies the ingredients list on the back of the product.").

*Third*, the First Amended Complaint "alleges nothing of what reasonable consumers of the Product . . . expect" or that they would be misled. *Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749, at *3; *see also Lemke*, 2022 WL 1442922, at *5. *Jackson* and *Lemke* are cases recently filed by Plaintiffs' counsel—and recently dismissed by their respective courts—that also focus on "real cheese" statements. "Central to all of [these] claims is the notion that the Product's label misleads consumers" by representing that the product contains "REAL cheese" and "omits" that the cheese "is combined with . . . cheaper filler" ingredients, such as "starch, nonfat milk, and whey." *Jackson*, 2022 WL 4591749, at *2. The First Amended Complaint

alleges the same.  *See* Am. Compl. ¶¶ 28-36 (alleging "dairy product solids" are a "lower cost, filler ingredient and bulking agent"); *id.* ¶¶ 22-27 (alleging that palm oil is a "lower quality cheese substitute[]").  As with prior cases, Plaintiffs' "theory of deception fails because Plaintiffs have not plausibly shown that the product's label would mislead a reasonable consumer of the Product and because nothing about the Product's label is false, misleading, or deceptive as a matter of law." *Jackson*, 2022 WL 4591749, at *2.

*Fourth*, the First Amended Complaint suggests, and Plaintiffs' response to Defendant's pre-motion letter (ECF No. 18) confirms, that Plaintiffs intend to rely on *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018).  That approach is mistaken.  In *Mantikas*, labels on Cheez-Its crackers were plausibly deceptive because reasonable consumers know that crackers "are typically made predominantly of grain" and the packaging would suggest—falsely—that they were made with "predominately [] whole grain." *Id.* at 638.  By contrast, the First Amended Complaint does not—and cannot—allege that reasonable consumers have an analogous understanding of the term "filling."  Indeed, *Mantikas* noted that the "same consumer, confronted with the claim that a cracker is 'made with real vegetables,'" would be unlikely to expect a "cracker [] made predominantly of vegetables." *Id.*  When faced with such ambiguity, courts throughout the Second Circuit and beyond have turned to the broader context, including the ingredients list.  *See, e.g.*, *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 1766167, at *3 (E.D.N.Y. Feb. 3, 2023); *see also McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) ("[W]hen . . . a front label is ambiguous, the ambiguity can be resolved by reference to the back label.").

Further, the description at issue here must be interpreted in the context of the entire label. One such contextual factor is that the Combos® label includes the depiction "Natural Flavor," an

FDA term referring to a flavoring element "derived from food ingredients (including dairy products)," "whose significant function in food is flavoring rather than nutritional." *See Smith v. Gen. Mills Sales, Inc.*, 2023 WL 2349908, at *2 (N.D. Ill. Mar. 3, 2023) (quoting 21 C.F.R. § 101.22(a)(3)). Here, the term "Natural Flavor" emphasizes that the Product is cheddar cheese-***flavored***. An additional description on the back of the Product's packaging supports this interpretation.



Similarly, the complained-of description inherently implies combination with other ingredients. The claim is not "filling made *of* real cheese"; the claim is "filling made **with** real cheese." *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020) (finding "made with real honey" not misleading even though other sweeteners were also used); *Sarr*, 2020 WL 729883, at *4 (noting that made with "real butter" does not imply that other fats are also not used). A reasonable consumer wanting more information as to the *amount* and role of cheese in the Product would view the information panel to provide any desired clarity.

*Mantikas* does not save the First Amended Complaint for another reason. The label is clear that the Product is a "baked cracker"; the filling and its cheese are obviously not the Product's primary ingredient. Am. Compl. ¶¶ 21-22. The first ingredient by weight is "wheat

10

flour." *Id. Mantikas* distinguished its reasoning from cases like this one where consumers claimed to have been "misled about the quantity of an ingredient that obviously was not the products' primary ingredient." 910 F.3d at 638. Thus, as Courts in this District have "previously explained" in cases involving Mr. Sheehan's firm, "there is no deception" on the label to be cured, and these claims must be dismissed. *Beers*, 2022 WL 493555, at *5; *Twohig*, 519 F. Supp. 3d at 164.

*Finally*, the First Amended Complaint suggests the label led Plaintiffs to believe that the Product would have certain (but unspecified) "nutritional attributes such as its protein content, vitamins and minerals and taste." Am. Compl. ¶ 58. That allegation is implausible. The front label says nothing about the nutritional value, which is separately set forth in the FDA–required nutritional facts label. And it would be unreasonable to expect, absent an explicit claim, that a processed snack food contains a significant amount of protein, vitamins, or minerals. *See, e.g.*, *Jackson*, 2022 WL 4591749, at *3 (observing that consumers who buy "processed foods" expect "processed ingredients"). Moreover, even if Plaintiffs held beliefs about the nutritional value of the Product, the First Amended Complaint does not plausibly allege that a reasonable consumer would. Unsubstantiated statements from unattributed food industry executives about how consumers view "cheese" generally, *see* Am. Compl. ¶¶ 5, 7-11, do not suffice to inform their reasonable beliefs about processed snacks containing filling made with cheese.

### B.    The First Amended Complaint Does Not Allege Causation of a Cognizable Injury.

Because New York law "does not recognize an injury based on deception itself," *Belcastro v. Burberry Ltd.*, 2017 WL 5991782, at *3 (S.D.N.Y. Dec. 1, 2017), a plaintiff must "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase," *Orlander*, 802 F.3d at 302. To do so, a plaintiff must

show either that (1) she "did not receive the product [she] bargained for" or (2) "that the deceptive practice caused the plaintiff to overpay." *Belcastro*, 2017 WL 5991782, at *3. This latter theory of overpayment is sometimes referred to as a "price premium." *See, e.g.*, *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).

It is unclear which theory Plaintiffs are advancing, but the First Amended Complaint fails as to either. Plaintiffs state that "had they known the representations and omissions were false and misleading," they "would not have purchased [the Product]." Am. Compl. ¶ 61. This is precisely the "flawed 'deception as injury' theory" that New York has "expressly rejected." *Izquierdo*, 2016 WL 6459832, at *7 (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y. 2d 43, 56 (1999)). Plaintiffs' mishmash of injury allegations continues with the statement that the "value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant." Am. Compl. ¶ 63.

But this conclusory statement is not sufficient to plead causation of an actual injury. A plaintiff must allege a "connection between the misrepresentation and any harm from, or failure of, the product." *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018) (quoting *Small*, 94 N.Y.2d at 56); *see also id.* at *8 ("In the absence of facts related to the value or the purchased product, or how the product fell short of what it purported to be, the [] Complaint only reflects Plaintiff's subjective disappointment."). Plaintiffs' vague allegations about desired nutritional attributes do not plausibly create such a "connection," especially when the ingredient to which they are attributed—cheese—is, in fact, present.

And finally, Plaintiffs allege that the Product is sold at a "premium price, $2.99 for 6.3 oz, excluding tax and sales." Am. Compl. ¶ 42. But Plaintiffs fail to provide any benchmark by which to evaluate that price; a price is not "premium" simply because Plaintiffs state it is so.

*See, e.g.*, *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017) ("[C]laims of injury . . . require an objective measure against which the plaintiff's allegations may be evaluated."). Plaintiffs here have provided no facts about what the premium was or how the price paid compares to non-premium prices. Indeed, Plaintiffs' counsel made similar allegations that failed to state a claim in a putative class action concerning McDonald's vanilla soft serve ice cream. *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021). The court rejected conclusory allegations that the product was sold at a premium, noting that the plaintiff "offers no facts to support the counter-intuitive notion that there is such a premium, given the pricing shown in the complaint and the context of the market." *Id.* The same reasoning applies in this case.

## II.     PLAINTIFFS' AGRICULTURE AND MARKETS CLAIM FAILS.

Plaintiffs claim a violation of § 201(1) of the New York Agriculture and Markets Law (the "AGM"). That claim fails at the threshold because the AGM does not provide a private cause of action. Instead, "plaintiffs receive their private rights of action for the misbranding of food under consumer protection laws such as NYGBL §§ 349 and 350." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 182 n.9 (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 701 (2d Cir. 2020); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280–81 (S.D.N.Y. 2014) ("New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws, such as GBL § 349"); *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *4 (S.D.N.Y. Dec. 13, 2017) ("New York law provides remedies and a private right of action for misbranding food under GBL § 349 . . . ."); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *4 (E.D.N.Y. July 21, 2010) ("New York . . . discourage[s] the misbranding of food through the availability of remedies pursuant to [its] consumer protection laws.").

But even if the AGM gave Plaintiffs an independent cause of action, the First Amended Complaint would still fail to state a claim. Section 199-a(1) of the AGM prohibits the sale of "misbranded" food. Food is "misbranded" when the labeling is "false or misleading" to a reasonable consumer. *Ackerman*, 2010 WL 2925955, at *4 (citing 21 C.F.R. § 101). The Product's label is not false or misleading for the reasons discussed above—e.g., (1) the statement on the label is literally true; (2) the front label says nothing about the nutritional value, and it would be unreasonable to expect, absent an explicit claim, that a processed snack food contains a significant amount of protein, vitamins, or minerals; (3) omitting the inclusion of cheaper filler ingredients is not misleading as a matter of law, *see Jackson*, 2022 WL 4591749, at *2; and (4) it is unreasonable for a consumer to read a statement about the *type* of ingredient and infer a conclusion about the *quantity* of that ingredient.

## III.   PLAINTIFFS' FRAUD CLAIM FAILS.

Although Ms. Rodriguez initially withdrew her fraud claim in the original complaint, the new Plaintiffs have sought to resurrect that theory. Plaintiffs' fraud claim should be considered abandoned, but in any event, it also fails on the merits. "Under New York law, the elements of a fraud claim are: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Angeles v. Nestle USA, Inc.*, 632 F. Supp. 3d 309, 318 (S.D.N.Y. 2022).

In pleading these elements, Plaintiffs' fraud claim "largely hinge[s] on the same theory of misleading business practices" discussed above. *Id.* at 317. Failing "to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer" in violation of New York GBL §§ 349 and 350 also serves as a ground to dismiss a fraud claim based on the same theory. *Barreto*, 518 F. Supp. 3d at 806. Plaintiffs' fraud claim accordingly fails for the same reasons

their GBL claims fail.  There is no misrepresentation, much less a material one; a reasonable consumer would not reasonably conclude that the claim "filling made with real cheese" means that there is a certain amount of cheese in the filling or no additional additive ingredients; and Plaintiffs have not alleged any damage causally related to the label.  *Cf. Brownell v. Starbucks Coffee Co.*, 2023 WL 4489494, at *7 (N.D.N.Y. July 12, 2023) ("[T]he Court finds that Plaintiff has failed to allege a material misrepresentation of fact or omission since, as discussed above, a reasonable consumer would not conclude that the phrase '100% Arabica Coffee' on the Product's label communicates that it did not contain additives, such as potassium.").

The fraud claim also suffers from an additional, independent defect: the First Amended Complaint fails to adequately plead intent.  Plaintiffs must plead fraud with particularity.  While "Rule 9(b) permits a plaintiff to allege scienter generally, the Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'"  *Barreto*, 518 F. Supp. 3d at 808; *see also O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).  Plaintiffs do neither.

*First*, Plaintiffs do not even attempt to allege that Mars had a motive to commit fraud, nor do they allege any facts that make such a claim plausible.  Plaintiffs allege that the "express purpose" of Mars's labeling decisions was "inducing Plaintiffs and class members to purchase the Product."  Am. Compl. ¶ 100 (identifying the "WHY" of Plaintiff's fraud claim).  That allegation is insufficient as a matter of law.  In the context of consumer fraud claims, courts

15

recognize that conclusory allegations of a "generalized motive to satisfy consumers' desires, [or to] increase sales and profits, does not support a strong inference of fraudulent intent." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013). And because the label is accurate, Mars could not have had "knowledge of the falsity" and "intended to defraud plaintiffs." *Id.* at *26 ("Without knowledge of the falsity, Frito–Lay could not have intended to defraud plaintiffs.").

*Second*, Plaintiffs do not allege "strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91. "To comply with Rule 9(b), the complaint must be supported by more than 'conclusory statements' or 'hypotheses,' and it must set forth 'particularized allegations of fact.'" *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26-27 (2d Cir. 2016)). Plaintiffs allege no such facts. The most Plaintiffs allege is that "[t]he records [Mars] is required to maintain . . . provided it with actual and constructive knowledge" that the label was "false" and that Mars "made written and/or visual misrepresentations and omissions in the advertising and marketing of the Product." Am. Compl. ¶¶ 94, 98. None of that bespeaks conscious misbehavior or recklessness, nor does it allege any particular facts about Mars's knowledge or conduct. *Cf. Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (rejecting fraud and false advertising claims premised on consumers being misled because the amount of vanilla in vanilla ice cream was de minimis, even though plaintiffs had conducted a chemical analysis showing that the amount was de minimis).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice.

Dated: December 11, 2023                    Respectfully submitted,

                                           */s/ Benjamin W. Graham*
                                           Stephen D. Raber (*Pro Hac Vice*)
                                           Benjamin W. Graham (Bar No. BG1195)
                                           Meaghan E. Newkirk (*Pro Hac Vice*)
                                           WILLIAMS & CONNOLLY LLP
                                           650 Fifth Avenue, Suite 1500
                                           New York, NY 10019
                                           Tel.:   (202) 434-5000
                                           Fax:   (202) 434-5029
                                           Email: bgraham@wc.com

                                           *Counsel for Mars Wrigley Confectionery US, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ *Benjamin W. Graham*
Benjamin W. Graham