```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _08/28/2024_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL FRIAS, JESSICA AVILEZ AND ROY CAMPBELL, individually and on behalf of all others similarly situated,

                        Plaintiffs,

-against-

MARS WRIGLEY CONFECTIONERY US LLC,

                        Defendant.

23 Civ. 4422 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, Miguel Frias, Jessica Avilez, and Roy Campbell, bring this putative class action against Defendant Mars Wrigley Confectionery US, LLC ("Mars"), alleging that Mars deceptively marketed their Combos stuffed snacks as containing a "[f]illing made with REAL CHEESE" when it in fact uses predominantly "vegetable fats and cheese byproducts." Am. Compl. ¶¶ 12, 23, ECF No. 26. Plaintiffs allege (1) violations of New York General Business Law ("GBL") §§ 349 and 350; (2) fraud; and (3) violations of the New York Agriculture and Markets Law (the "AGM") § 201. *See id.* ¶¶ 70–101.

    Mars moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Def. Mot., ECF No. 30; Def. Mem., ECF No. 31. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**[1]

I.    Factual Background

    Mars manufactures and markets Cheddar Cheese Combos (the "Product"), a "cracker tube" snack product "stuffed" with a filling. Am. Compl. ¶¶ 12, 55. The Product's packaging indicates that

---

[1] The following facts are taken from the amended complaint, which the Court accepts as true for the purpose of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

it contains a "[f]illing made with REAL CHEESE" and includes a photograph of "a freshly shredded block of cheddar cheese." *Id.* ¶ 12.





The ingredient list for the Product states that it contains:

> WHEAT FLOUR, **PALM OIL, DAIRY PRODUCTS SOLIDS**, MALTODEXTRIN, CORN OIL, SUGAR, MODIFIED CORN STARCH; **LESS THAN 2% OF:** SALT, **BAKERS AND CHEDDAR CHEESE BLEND (MILK, CHEESE CULTURES, SALT, ENZYMES)**, LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE), DEXTROSE, SOY LECITHIN, COLORS (YELLOW 5 LAKE, YELLOW 6 LAKE, BLUE 1 LAKE), WHEY, HYDROLYZED CORN GLUTEN, NATURAL FLAVOR, LACTIC ACID, YEAST EXTRACT, LACTOSE, BUTTERMILK, CITRIC ACID.

*Id.* ¶ 21 (emphasis added). The predominant ingredient, wheat flour, "comprises the cracker tube."

*Id.* ¶ 22. The filling "consists almost entirely of lower quality cheese substitutes, indicated by the

2

second and third ingredients"—palm oil and "dairy products solids." *Id.*; *see id.* ¶¶ 24–36. Palm oil is a "highly processed vegetable oil." *Id.* ¶ 24. "Dairy products solids" is another name for whey permeate, a "by-product of the by-product in cheese manufacturing" used as a filler ingredient and bulking agent. *Id.* ¶¶ 28–29, 33. In all, "[t]he amount of real cheese and real cheddar cheese is less than two percent of the total weight of the ingredients used." *Id.* ¶ 41. The Product is "sold at a premium price, approximately $2.99 for 6.3 oz." *Id.* ¶ 42.

Plaintiffs purchased the Product between June 2017 and October 2023. *Id.* ¶¶ 50–52, 60. Plaintiffs state that, in purchasing the Product, they "read and relied on 'Made With Real Cheese' and the block of cheddar cheese to expect the filling contained a significant, predominant and/or absolute amount of real cheddar cheese and not a de minimis amount of real cheese." *Id.* ¶ 57. Had they known that the Product's filling was instead predominantly "lower quality substitutes such as vegetable oils and dairy product solids," Plaintiffs would not have paid as much for the Product. *Id.* ¶¶ 59, 61.

## II. Procedural Background

Christine Rodriguez filed this putative class action against Mars on May 25, 2023. ECF No. 1. Mars moved to dismiss Rodriguez's complaint on November 7, 2023. ECF No. 22. On November 27, 2024, Plaintiffs filed the operative amended complaint; Rodriguez then voluntarily dismissed her individual claims against Mars. ECF No. 27. Mars subsequently moved to dismiss the amended complaint. Def. Mot.

## DISCUSSION

### I. Rule 12(b)(6) Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is

3

not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

For a fraud claim to survive a motion to dismiss, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b)'s heightened pleading standard, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 13 Civ. 2107, 2014 WL 2510809, at *4 (S.D.N.Y. May 28, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). "A complaint alleging fraud, moreover, must plead facts that give rise to a strong inference of scienter." *Id.* (citing *S.Q.K.F.C., Inc. v. Bett Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)).

II.  <u>Violations of GBL §§ 349 and 350</u>

A. Legal Standard

Plaintiffs chiefly assert claims under GBL §§ 349 and 350. Am. Compl. ¶¶ 70–73. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce," and § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." GBL §§ 349, 350. To state a claim under either section, a plaintiff must allege that a defendant engaged in consumer-oriented conduct that was materially misleading and that the plaintiff suffered an injury as a result. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021).

A plaintiff must also show that the allegedly misleading practice is likely to mislead a reasonable consumer, acting reasonably under the circumstances. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam); *Barreto*, 518 F. Supp. 3d at 802. "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. "We therefore consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).

"Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Assocs., LLC*, No. 19 Civ. 11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (citation omitted) (quoting *Fink*, 714 F.3d at 741).

B. Application

1. Misleading to a Reasonable Consumer

Plaintiffs contend that the statement "[f]illing made with REAL CHEESE"—coupled with the block of cheddar cheese pictured on the Product package—is likely to mislead the reasonable consumer into expecting the Product's filling to "consist entirely or predominantly of real cheese and/or cheddar cheese." Pl. Opp. at 4, ECF No. 35 (quoting Am. Compl. ¶ 39). At this early stage, the Court finds that Plaintiffs have plausibly alleged as much.

First, Mars notes that "the statement on the label is literally true . . . . The Product is made with real cheese." Def. Mem. at 7. Indeed, Plaintiffs do not dispute that the filling contains at least some "real cheese" in the form of "Baker's and Cheddar Cheese Blend." Pl. Opp. at 3. As the Second Circuit has held, however, this fact is not determinative. In *Mantikas,* plaintiffs alleged that the words "made with whole grain" on the front label of certain Cheez-It boxes would lead a

5

reasonable consumer to believe that the crackers contained mostly whole grain. 910 F.3d at 634–35. "Instead, the primary ingredient was 'enriched white flour'—'whole wheat flour' fell either second or third." *Venticinque v. Back to Nature Foods Co., LLC*, No. 23-1236, 2024 WL 3385136, at *2 (2d Cir. July 12, 2024) (summary order) (citing *Mantikas*, 910 F.3d at 634–35). The Second Circuit, vacating the district court's judgment, concluded that it was "plausible that a reasonable consumer would understand the label's 'large, bold-faced claims of "WHOLE GRAIN"' to communicate that whole grain comprised the predominant grain in the crackers." *Id.* (citing *Mantikas*, 910 F.3d at 637) (cleaned up). Under the logic of *Mantikas*, an advertising claim can be misleading even if it is technically true. The fact that the Product contains some real cheese—or that the descriptor "made *with* real cheese" implies combination with other ingredients, Def. Mem. at 10 (emphasis added)—does not, therefore, defeat Plaintiff's claims as a matter of law, *see Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 387 (S.D.N.Y. 2021) ("[T]he Court cannot conclude that references to honey on the packaging of this product cannot be deceptive as a matter of law because the product includes some honey.").

Mars argues that *Mantikas* is inapposite because, whereas "reasonable consumers are likely to understand that crackers are typically made predominantly of grain," Plaintiffs do not allege that reasonable consumers "have an analogous understanding of the term 'filling.'" Def. Mem. at 9 (quoting *Mantikas*, 910 F.3d at 638). It is at least plausible, however, that a reasonable consumer would instinctively understand "cheddar cheese"-flavored "stuffed snacks" to be filled predominantly with cheese. *See* Am. Compl. ¶ 12. A consumer would then "look to the bold assertions on the packaging to discern" the contents of the filling, *Mantikas*, 910 F.3d at 638, and encounter the representation that the filling is "made with REAL CHEESE," Am. Compl. ¶ 12. Although Mars argues that the amended complaint fails to allege what a consumer would expect from the Product,

6

Def. Mem. at 8, Plaintiffs clearly state that a reasonable consumer "will expect the filling to consist entirely or predominantly of real cheese and/or real cheddar cheese." Am. Compl. ¶ 39.

Mars also contends that *Mantikas* should be cabined to cases where plaintiffs claim to be misled about a product's primary ingredient—which, here, is "wheat flour," not cheese. Def. Mem. at 10–11. It is true that the *Mantikas* Court distinguished a cracker purportedly "made with whole grain" from a cracker "made with real vegetables," noting that in the latter case, a reasonable consumer "likely would not likely conclude that the cracker was made predominantly of vegetables." 910 F.3d at 638. But as other courts applying *Mantikas* have concluded, "[n]arrowly construing *Mantikas* to apply only in cases in which a product's primary ingredient is at issue makes little sense and would encourage highly deceptive marketing." *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 104 (E.D.N.Y. 2020); *accord Campbell*, 516 F. Supp. 3d at 387; *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 463 (S.D.N.Y. 2020). A chocolate chip cookie that is advertised as being "Made With Natural Chocolate" misleads a customer "if the cookie's chocolate's content is 99.999% artificial and synthetic," even if flour (not chocolate) is the cookie's main ingredient. *Sharpe*, 481 F. Supp. 3d at 104.

Next, Mars argues that even if "made with REAL CHEESE" were misleading, the Product's ingredients list and the mention of "Natural Flavor" on the front would clear up any misconceptions about the quantity of real cheese. Def. Mem. at 9–10. Again, *Mantikas* forecloses this argument at the motion-to-dismiss stage. There, the Circuit held that "the misleading quality of the message is not effectively cured by implicitly disclosing the predominance of enriched white flour in small print on an ingredients list on the side of the package." 910 F.3d at 639. Here, likewise, the fine-print disclosure that the Product contains mostly palm oil and "dairy products solids"—and less than 2% of "Bakers and Cheddar Cheese Blend"—does not cure the relatively prominent advertisement that the Product's filling is "made with REAL CHEESE." Am. Compl. ¶ 20–21. Nor does an ambiguous

7

reference to "natural flavor" on a separate portion of the package render the "real cheese" claim not misleading.

In all, Plaintiffs have plausibly alleged that a reasonable consumer would likely be misled by the real-cheese representations on the Product's packaging.

      2. Injury

Mars also argues that Plaintiffs have not alleged a cognizable injury. Def. Mem. at 11–13. The Court disagrees. Plaintiffs' allegation that they paid a "premium price, approximately $2.99 for 6.3 oz" suffices—albeit barely—to allege injury. Am. Compl. ¶ 42.

To establish injury under GBL §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Campbell*, 516 F. Supp. 3d at 388 (citation omitted). As the Circuit has held, to meet the injury requirement, it is sufficient to allege "that the price of the product was inflated as a result of defendant's deception." *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order).

Mars contends that Plaintiffs' allegation that the Product was sold at a "premium price" is insufficient because Plaintiffs "fail to provide any benchmark by which to evaluate that price." Def. Mem. at 12. But, the Second Circuit has expressly held that a plaintiff's "failure to identify the prices of competing products to establish the premium that she paid is not fatal to her claim at this stage of the proceedings." *Axon*, 813 F. App'x at 704 (cleaned up); *see also Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280 (S.D.N.Y. 2021) (holding that, after *Axon*, allegation that plaintiff "bought the product at a price at or exceeding $2.99 and she would not have paid as much as she did" absent the misrepresentation was sufficient to state injury (cleaned up)). Here, as in *Valcarcel*, Plaintiffs

8

allege that "the Product is sold at a premium price," and that they "paid more for the Product than they would have had they known the representations and omissions were false and misleading or would not have purchased it." Am. Compl. ¶¶ 42, 61. Accordingly, Plaintiffs have adequately pleaded injury resulting from the alleged violations of the GBL.

Because Plaintiffs have adequately pleaded violations of GBL §§ 349 and 350, Mars's motion to dismiss Count I is DENIED.

### III. Violation of AGM § 201

Next, the Court agrees that Plaintiffs' claim under AGM § 201 must be denied because "the AGM does not provide a private cause of action." Def. Mem. at 13. Although the AGM incorporates federal regulations "forbidding the misbranding of food, plaintiffs receive their private rights of action for the misbranding of food under consumer protection laws" such as GBL §§ 349 and 350. *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 181 n.9 (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 701 (2d Cir. 2020); *accord Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280–81 (S.D.N.Y. 2014). "AGM § 32 makes clear that New York's Commissioner of Agriculture and Markets, not individual plaintiffs, has the sole right to investigate and bring such actions under the AGM." *Thompson v. Schwan's Consumer Brands Inc.*, No. 24 Civ. 831, 2024 WL 3862104, at *4 (S.D.N.Y. Aug. 19, 2024).[2]

Accordingly, Mars's motion to dismiss Count II is GRANTED.

### IV. Fraud

Although Plaintiffs have sufficiently alleged that the Product's packaging is misleading, they fail to plead fraudulent intent. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false;

---

[2] Although Plaintiffs point to several instances where courts have permitted AGM claims to proceed alongside GBL claims, Pl. Opp. at 12, none of those decisions addressed whether AGM § 201 provides a private right of action.

9

(3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015).  Plaintiffs contend that they have alleged fraudulent intent "generally" by "providing the 'who, what, where, when, and how' of the fraud." Pl. Opp. at 13.  But, Plaintiffs conflate Rule 9(b)'s requirement that they "state with particularity the circumstances constituting fraud" with its standard for pleading fraudulent intent. *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 354 (S.D.N.Y. 2020).  In other words, the issue is not whether Plaintiffs have pleaded the facts of the alleged fraud with particularity, but whether they have alleged "sufficient facts to raise a strong inference of fraudulent intent." *Id.* (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

Plaintiffs' only allegation going to fraudulent intent is their claim that Mars had "actual and constructive knowledge" that consumers preferred "real cheese" and "highlighted these attributes in selling the Product," despite knowing that the Product's filling contained mostly "lower quality cheese substitutes." Am. Compl. ¶¶ 91–95.  "However, simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran*, 450 F. Supp. 3d at 354; *accord Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022).  "Moreover, while the existence of accurate information regarding the product's ingredients on the package does not stymie a deceptive labeling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud." *Campbell*, 516 F. Supp. 3d at 391.

Accordingly, Mars's motion to dismiss Count III is GRANTED.

## CONCLUSION

For the reasons discussed above, Mars's motion to dismiss is GRANTED as to Plaintiffs' fraud and AGM claims, which are dismissed with prejudice. The motion is DENIED as to Plaintiffs' GBL §§ 349 and 350 claims. By **September 11, 2024**, the parties shall jointly submit a proposed briefing schedule for their anticipated motions for class certification and summary judgment. *See* ECF No. 44. By separate order, the Court shall refer the case to a magistrate judge for settlement.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 22 and 30.

SO ORDERED.

Dated: August 28, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge